hmg.3.1.25



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Sean R. Delaney
*Assistant United States Attorney*
Sean.Delaney@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: *410-209-4913*
MAIN: *410-209-4800*
FAX: *410-962-3091*

✓___ FILED    ___ ENTERED
___ LOGGED    ___ RECEIVED

**12:57 pm, Apr 01 2025**

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____TTD_____Deputy

March 2, 2025

Ryan L. Burke
Law Offices of Ryan Burke
812 N. Calvert Street, Suite I
Baltimore, Maryland 21202

Re:    United States v. Mervyn Fombe Abiko
       Criminal No. RDB-24-167

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Mervyn Fombe Abiko (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **March 10, 2025**, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.  Count One – Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349

   i.  The Defendant and at least one other person entered into an unlawful agreement;

   ii. The purpose of the agreement was to knowingly execute or attempt to execute a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and to use or cause the

use of the mails (or a private or commercial carrier or interstate wires) as charged in the Indictment; and

iii.  The Defendant knowingly and willfully became a member of the conspiracy.

Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1349 | N/A | 20 years | 3 years | $250,000 or twice gross gain/loss | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and/or 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to

2

request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" section below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

3

g.    If the Court accepts the Defendant's guilty plea, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

a.  <u>Count One:</u>

i.  The applicable base offense level is 7, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2B1.1(a)(1).

      a.  The offense level is increased an additional 14 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), because the actual loss in this case exceeds $550,000 but is less than $1.5 million (subtotal: level 21);

      b.  The offense level is increased an additional 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offenses involved more than 10 victims (subtotal: level 23);

4

    c.   The offense level is increased an additional 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(10), because the scheme involved sophisticated means, and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means (subtotal: level 25);

    d.   This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    e.   **Accordingly, the resulting ANTICIPATED offense level, after reduction for acceptance of responsibility, is 22.**

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Obligations of the Parties</u>

9.    At the time of sentencing, this Office will recommend a reasonable sentence. The Defendant reserves the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11.    The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least **$1,313,325**, to be joint and several with the codefendants. The Defendant agrees that pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

6

## Forfeiture

12.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the scheme to defraud.

13.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitutes money, property, and/or assets derived from or obtained by the Defendant as a result of the Defendant's illegal activities, to include a money judgment in the amount of $1,079,411.

14.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Abandonment

17.    The Defendant knowingly and voluntarily waives any right, title, and interest in the following property:(1) Foldable Samsung Cellular Telephone and (2) Samsung Cellular Telephone which were seized incident to the arrest of the Defendant on October 1, 2024 (the "Abandoned Property") and consents to its federal administrative disposition, official use, and/or destruction.

18.    The Defendant understands that he would have a right to file a claim to the Abandoned Property and waives his right to claim the Abandoned Property. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of

7

whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to affect the Defendant's waiver of ownership interest.

## Defendant's Conduct Prior to Sentencing and Breach

19.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

21.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

22.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Philip A. Selden
Acting United States Attorney

Sean R. Delaney
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3 | 10 | 2025
Date

Mervyn Fombe Abiko

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/10/25
Date

Ryan L. Burke, Esq.

9

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

From in or about February 2020 through February 2021, in the District of Maryland and elsewhere, the Defendant, Mervyn Fombe Abiko, knowingly and willfully entered into an illegal agreement with Martin Tabe, Gladstone Njokem, and other persons to engage in a scheme to defraud and obtain money through materially false and fraudulent pretenses, representations or promises. Abiko and his co-conspirators further collected the names, dates of birth, social security numbers and other personal identifying information ("PII") of victims, without lawful authority, during and in relation to various acts of wire fraud, including but not limited to submitting fraudulent claims for unemployment insurance ("UI") benefits.

In furtherance of the conspiracy and scheme to defraud, Abiko and his co-conspirators collected victims' PII without the victims' knowledge or consent, then used electronic devices to share victims' PII with each other through interstate wire communications. Then, using victims' PII and interstate wire communications, Abiko and his co-conspirators filed applications to claim UI benefits from the Maryland Department of Labor ("MD DOL") and state workforce agencies ("SWAs") in other states, including Arizona, District of Columbia, Georgia, Illinois, Michigan, Tennessee and Virginia. Members of the conspiracy directed UI payments, which SWAs often issued in the form of prepaid debit cards in the names of the victims, to the conspirators' own addresses and nearby addresses to which they had access. Abiko and his co-conspirators then used the prepaid debit cards to withdraw the UI benefit payments in cash from various ATMs.

In furtherance of the scheme, members of the conspiracy created email addresses that they used to impersonate the victims and file fraudulent UI claims. For example, on or about June 2, 2020, MD DOL received UI claims in the names of C.M. and B.M., each with an originating IP address of 73.173.201.29. According to records from Google, two email accounts were created on June 3, 2020, within 90 minutes of each other as part of the claims in C.M. and B.M.'s name. Both email addresses list the same recovery phone number, which matches a number provided by Abiko's co-conspirator, Gladstone Njokem, on official documents from U.S. Citizenship and Immigration Services. Records also indicate that both email addresses were linked through "cookies" to an email address used by Njokem. Additionally, MD DOL records reflect that the resulting UI claim payments, issued in the form of Bank of America ("BOA") debit cards, were mailed to 16707 Governors Bridge Road, Apt. 204 – the address listed on co-conspirator Martin Tabe's MVA record. B.M. was interviewed by law enforcement and reported he/she had been employed with the same job for the past five years, had never lived in Maryland and had never filed for UI benefits with MD DOL. C.M. also did not reside at 16707 Governors Bridge Road, Apt. 204.

1

Investigators obtained ATM video surveillance footage for the BOA debit card issued in the names of victims. Video surveillance showed Abiko using the BOA debit card in C.M.'s name to make three cash withdrawal transactions totaling approximately $3,000, between June 12, 2020 and June 14, 2020. Video surveillance also showed Abiko using the BOA debit card issued in the name of victim B.M to make fifteen cash withdrawal transactions totaling approximately $13,000 between June 13, 2020 and July 14, 2020. Abiko was also observed on video surveillance using the BOA debit card issued in the name of victim E.W. to make thirteen cash withdrawal transactions totaling approximately $10,900 between June 15, 2020 and July 14, 2020.

On February 4, 2021, investigators executed a federal search warrant at Tabe's residence, 16521B Governors Bridge Road, Unit 109, Bowie, Maryland. Tabe was not present at the time of the search. In the bedroom of the residence, investigators recovered a BOA debit card issued in C.M.'s name. Also located in Defendant's bedroom were lease applications, copies of driver's licenses and bank cards in other individuals' names.

Also on February 4, 2021, investigators executed a federal search warrant at Njokem's residence, 5610 Hamilton Manor Drive, Unit 1, Hyattsville, Maryland, where they found numerous bank cards in other individuals' names. In addition, investigators recovered a lease application similar to those located at Defendant's residence, which contained the date of birth and social security number of victim C.F., and victim C.F.'s driver's license showing an address at Governor's Green Apartment complex.

Abiko and others knowingly and willfully participated in the fraudulent scheme, knowing that the UI claims submitted to MD DOL and other SWAs were fraudulent in nature. Moreover, Abiko acted with specific intent to defraud the Government and individual victims of UI benefits. Abiko knowingly transferred, possessed and used means of identification of other persons, without lawful authority, to commit acts of wire fraud in furtherance of the conspiracy.

Abiko stipulates that at least $1,079,411 in fraudulent UI benefits were either mailed to addresses utilized by co-conspirators or applied for using the common IP address 73.173.201.29. In total, at least $1,313,325 in UI benefits applied for using the names and PII of over 183 victims are traceable to the conspiracy based on common IP addresses, mailing addresses and/or email addresses used for the fraudulent UI claims. The Government's evidence in this case consists of, among other things: bank cards and other documents with victims' names and PII that were found in the possession of co-conspirators; UI claims and related data from the MD DOL and other SWAs; BOA ATM footage depicting co-conspirators withdrawing cash using bank cards in victims' names; testimony; files and communications recovered from co-conspirators' electronic devices; and testimony from victims whose PII was stolen and used by the conspiracy.

Abiko and his co-conspirators collectively obtained approximately $1,313,325 through the conspiracy and scheme to defraud.

SO STIPULATED:

_____
Sean R. Delaney
Assistant United States Attorney

_____
Mervyn Fombe Abiko
Defendant

_____
Ryan L. Burke, Esq.
Counsel for Defendant

3